Caroline Wichman, Plaintiff
60 Descanso Drive #2117
San Jose, CA 95134
(805) 434 8363
cwwichman108@yahoo.com

Honorable Dolly M. Gee                                   United States District Court

Caroline Wichman v, San Luis Obispo 2:22-ev-03156      Hg: 10/28/22 9:30 AM

**Plaintiff Caroline Wichman Opposes Attorney Request to Withdraw**

Copies emailed to counsel David Kaufman, Doug Smith, Joshua George, Chase Martin 10/16/22

Dear Judge Gee,

  I received court paperwork stating my attorney, David Kaufman, wants to withdraw from this case.  I don't want that to happen.  I read in David's papers that to get out of a case, an attorney must show "good cause."  Seems good cause would be a "good" reason.  Getting out of a case when discovery has hardly begun is a good reason for him to stay, not leave.  I feel I am being pushed to dismiss this lawsuit by David and other counsel after David was allowed to see only a video and a 296-page report, and he did while also driving from La Jolla to San Luis Obispo (SLO) and back, the same day.

  While the report sounds like a lot, emails between the other attorneys and David state there are more videos, more reports. Since the Sheriff's office and the DA have supposedly been working on it for a year and a half, I wonder if the report contains all in-the-field reports written by officers and investigators or is it a scrubbed report written, as they say on television, by "the suits."  Although I have not seen that document, but now have been offered a chance, that opportunity is to sit in a SLOPD(!) or attorney's office, like a not to be trusted little kid.  How does one really read and study in what must have been an awkward rushed few hours at most, with a monitor watching him, David returning to La Jolla around midnight.

  From the first press conference, on the day after the May 10th tragic shootings of the officers and my son, I knew something was wrong.  Many times in the months before the tragedy, I and others had been in touch with San Luis Obispo Police Department (SLOPD) about Eddie's increasing bizarre, but not violent, behavior, and officers helped and responded.  Some of that is described in the attached article from a local paper.  Numerous times officers had been to Eddie's apartment on "welfare checks" of his well-being.  I don't doubt Eddie must have been an annoyance to neighbors and responding officers.

  For 16 months after the initial announcement, the city stuck to their original version:  On May 10, 2021, around 5:30pm, SLOPD officers went to execute a search warrant for stolen goods at Eddie's 2nd floor apartment.  Eddie was inside, "lying in wait" and did not answer the officers banging on the only outside door and announcing their presence.  The officers forced

1

their way in and Eddie shot and killed one officer, shot and wounded a second officer, and then Eddie shot himself in a suicide.

From the beginning, I and others wondered what lead the SLOPD to believe they needed such a violent and dangerous method of entering and searching Eddie's apartment. (In the last few weeks, David told us he was told [after 16-17 months] by city's attorneys that the police tried to call Eddie on his phone. What does "tried to call" mean? If true, why so long to tell us?) Not knowing what really happened, right after the incident I borrowed the money and rushed to get a private autopsy. We did not get the county's autopsy report of Eddie until September, 2022, 16 months after the shooting and, as far as I know, we do not have the Benedetti autopsy.

The private autopsy showed not one, but 14, gunshot wounds in Eddie, four in the rear and back! That pathologist said he needed information about the bullets, directions, where found etc., but I don't think the city gave it to David, or that he asked, but if provided, it was not until the September 9th meeting, just over a month ago. Journalists found gunshot damage to Eddie's building in several places, to a window in a building across the street to the north and gunshot damage to a truck to the south, suggesting a wide-open gunfight without notice to the neighbors or passers-by to shelter. On their own, they hit the floor, hid behind tables and beds.

In first conversations with David before his hiring, we told him all that and more. He sounded anxious to get to the truth. He seemed like a go-getter. In a 3/26/22 text to my daughter, Alisa, he wrote, "Despite the challenges I would like to figure out what happened and I'm prepared to fight to get Justice for Eddie and for you and Caroline….If I'm right about my suspicions…SLOPD is not going to willingly turn over information…because it will show what really happened and why. We will have to fight tooth and nail…." At all times, Alisa and I wanted to know why SLOPD used such a dangerous way for some stolen property, and second, if Eddie did shoot the officer(s), was he really "lying in wait" when he did, and third, did Eddie commit suicide? The truth, not money, has always been our desire. Still is.

From the beginning, all I wanted was the truth and a recognition of it, but on the afternoon of 9/9/22 in a SLO government office, David was shown a defense-selected video and a defense-selected 16-month-in-preparation 296-page report, and he must have forgotten about finding out what really happened before the shooting started. Why this careless invasion of a neighborhood and deaths of Detective Benedetti and Eddie? There is still time, and I need David. I know I spoke harsh to David, but this has been a horrible experience for all and it's been eating me up for almost a year and a half. I do not believe for a second the investigation took all this time, yet public records requests that I am aware of have been turned down .

For the longest time, I did not want to believe Eddie shot Detective Benedetti and killed himself. From June, 2021 I have had an autopsy report that showed Eddie was shot 14 times but the city told a different story! While at the May 11th press conference, the county claimed they did not have mental health info on Eddie, the city <u>did</u> have evidence (in their own and other's emails, citations etc.) of mental issues, lots of it, from me and Eddie's friends, yet city officials said nothing at the same press conference. Seventeen months later, the city still has not said to me they have had such evidence. I still don't believe Eddie killed himself, and with 14 bullets!

This year on September 9th, they showed a video to David. The city claims it is not "comfortable" releasing other evidence, and there are "privacy concerns." (Does the comfort of the city outweigh the need for the family or the public's right to know? I don't think so.) What do the others show? I believe I was told the other body cams were not turned on. That is convenient, but, I apologize, not believable. The city and county play fast and loose with the evidence, almost all of which is exclusively in their hands.

Why the six-man SLOPD entry team with assault rifles went to seize only stolen goods without, so far as I know, any consideration of "available of less severe alternatives" or Eddie's "mental or emotional state" (quotes are a court's words in David's 9/12/22 email to me trying to bully me to dismiss) and then a rammed entry makes me want to scream! Also, beyond a "clerical error," I have yet to receive a satisfactory explanation why the items confiscated were listed on two separate sheriff's property receipts with two different dates (May 8 and 10), two different "incident numbers" (2105-03609 and 2105-03706) and with the names of two different sheriff's and two different badges on each—four different sheriffs.

This case for the family was never about money! Early on I was told by friends I had to get an attorney, and sue, or I would never get the truth about what happened. Unlike at first, now I do not now think any officer intended anyone to die on May 10th, but it looks like there were serious errors and carelessness.

I can understand its hard for police who planned, authorized and executed this search disaster, which got one of their officers killed, to deal with certain facts. I too have to deal with certain facts, but I want less pain for all, not more. Below I offer the city the SLOPD and the sheriff, a way out with little, if any, embarrassment.

As I started this letter the other day, it seemed the way to find out the truth was for me, or someone on my behalf, to start looking at all the relevant evidence, that neither David nor I have seen. THEN another simpler answer came to me.

The parties negotiate an announcement we all can live with, in which the city and county accept some of the responsibility which seems to be theirs, and I accept some of which is mine or Eddie's in a way in which we can all have some peace, and close this matter soon. If that happens, 1) Subject to resolution of the "property receipt" confusion, I will drop my request for further review of any more evidence, and 2) I will dismiss the case. A part of the joint announcement would call for it to be sent to news outlets where the tragedy has been covered.

I am prepared to talk with David about a starting point in negotiations for such a statement. In fact, I have started writing a beginning draft of such a working document to start things. Of course, I agree that the defendants, or me, have to have more time in which to file any further papers, in case there is no agreement.

      So, I sincerely urge the court to 1) deny the motion to withdraw; 2) grant the defendants whatever time is needed to allow thoughtful negotiation, and 3) encourage or order both sides to talk about a resolution, that does not merely try to push me and my family out the door without knowing what really happened.

Sincerely,

/s/ Caroline Wichman, Eddie Giron's mother and Plaintiff

One attachment