1  Caroline M. Wichman

2  60 Descanso Dr. #2117

3  San Jose, CA 95134

4  Plaintiff in Pro Se



**FILED**
CLERK, U.S. DISTRICT COURT

Jul 25, 2023

CENTRAL DISTRICT OF CALIFORNIA
BY: ____KT____ DEPUTY

5

6

7

8  # UNITED STATES DISTRICT COURT

9  # CENTRAL DISTRICT OF CALIFORNIA

10

| | |
|---|---|
| 11  Caroline M. Wichman | Case No.: CV22-3156-DMG |
| 12      Plaintiff, | ORDER TO SHOW CAUSE WHY |
| 13      vs. | PLAINTIFF'S SURVIVAL CLAIM |
| 14  City and County of San Luis Obispo, | SHOULD NOT BE DISMISSED |
| 15  CA and Defendants,-Attorneys CV- | WITHOUT PREJUDICE |
| 16  Douglas C. Smith and Joshua M. | |
| 17  George | |
| 18      Defendant. | |

19

20      Before I begin I would like to apologize for any possible misunderstanding

21  taken by my choice of words and construction of sentences of explanations, in

22  reply to the court Order of 6/30/2023.  I speak and write in the Ebonics language.

23  Even as I hold a Master's Degree in Education, it has not changed the deep roots of

24  my upbringing and manner of speaking.  Raised in East Palo Alto, California,

25  where the population was 85% African American, the Ebonics language is

26  ingrained in my speaking and communications skills.

27

28

1.To begin with why Edward Giron's case should not be dismissed from this court. It would be an infringement on the Justice System in Honor of the American people. And a breach to the Laws of Civil Rights.

2. Excessive force could not be more apparent, than what the Police force of San Luis Obispo, did to Edward Giron.  Brutal execution was the manner of death inflected on Edward Giron. ( See Exhibit A.)

 It was extremely impossible that he had no time to shoot two other people, yet himself.

3. In Alderman v United States 394.US./ I believe the warrant to enter the home of Edward Giron on May 10, 2021 was invalid.  Because the properties that the Police department claim they were looking for had already been seized two days' prior the double murders. (See Exhibit B.)

4. A warrant was not in the hands of any officers at the door, when kicking it down on May 10, 2021. Though, you do hear voices saying they had one.  (See Exhibit C.)

5. An affidavit was produced weeks after the murders. This is due to numerous pleas by attorneys representing the family at that time.  Under professional scrutiny by the US. Justice Department Officials, it  will surly disclose the discrepancies in the timing of burglaries. As we have,  late night moving vehicles described in different colors and witness testimony describing two burglars, one living behind the store of robbery. Again, two robberies occurrence at the same time. Here again, the Police Department has made a critical identity mistake.  Resulting in fatal consequences.  (See Exhibit C.)

6. Within the 4th Amendment, which proceeds a careful and serious Court Order. This is to be administered to said criminals or criminal, at the time of entrance of the arrest   We see that the order was signed twenty minutes before the double homicides.  Highly unusual.

7.      Too much information at this stage of court proceedings should not be given to the Defendants and their Attorneys . Because the Defendants and the Attorneys have a way of changing the firsthand evidence, in the name of Law.  Again, this can been seen on the U-Tube video verses the first press release made fifteen hours after the deaths on May 10, 2021, of Giron and Benedetti.

8. Denial before death of Medical Services. "Dead men Don't speak."  So, on behalf of Edward Giron, the extreme measures that were ignored by the governing bodies of San Luis Obispo regarding his mental condition must be prepared at length. I will comply. But, at this short notice, I cannot prepare a presentable Exhibit for the courts.

9. In, Tom Baine Civil Rights Act. CA. Civil Code 52.1, Law Officers Reform.  It is critical to the welfare and protection for those of us who have been violated or not. I cannot begin to explain to anyone who has not endured the hardships, the incriminations, the insults, the inhumane treatment, that I have endured by the hand of San Luis Obispo, Law Enforcement, and their governing bodies, that have protected and shield them, actually promoting, this conduct of behavior. There is no way, unless you have endured this treatment would you be able to understand. The Monster treatment, the parents and families will have to live with for the rest of their lives.  They have used, Edward Giron to cover up the death of one of their own , only to protect their irresponsible actions, and unpredictable reactions to their own actions.  This is the case, hiding what they did and shifting the blame on the dead man.

10. My Rights.  What Rights:  They have accused my son and myself and family of crimes that have never entered the Court of Law.  What happened to innocent until proven guilty?

Death before an arrest, means you are guilty of Law Enforcements accusations.
You are judged by Law Enforcements peers. And so it appears, you are sentenced
to Death by Execution, again by Law Enforcement. And the parents and family
will be belittled and defaced by Law Enforcement.  All the while Law
Enforcement will use the media and social media to promote their fine
accomplishments.   They will belittle those that are not within compliance with the
words and actions of Law Enforcement.  Everyone must line up with the chain of
command, to uphold the code of conduct, by Law Enforcement.

11. My rights were buried with my son.  Could I get a job in San Luis Obispo after
the slander my family has faced?  Could I open a Business?  Could I get Housing?
The death threats, the social media attacks? They have destroyed my Life.  No
Court can give that back.  I have been stripped of all dignity.  I had a dream once.
But now, I can hardly Breath.

# Exhibit  A.



**AXIS**

FORENSIC TOXICOLOGY

**Testing Report**

Web: www.axisfortox.com

Phone: (317) 759-4TOX

| Laboratory Case Number: | 3224099 |
|---|---|

| Subject's Name: | GIRON II, EDWARD |
|---|---|

**Client Account:** 20475 / ACCA01

**Report To:** National Autopsy Experts, LLC
ATTN: National Autopsy Experts
3748 Putter Dr
Bonita, CA 91902
FX: 619-399-5879

**Agency Case #:** NOT INDICATED
**Date of Death:** 05/10/2021
**Test Reason:** Other
**Investigator:** NOT INDICATED
**Date Received:** 06/08/2021
**Date Reported:** 06/23/2021

**Laboratory Specimen No:** 40944056
**Container(s):** 01:GRT    Blood,NOT INDICATED

**Date Collected:**
**Test(s):** 70510    Comprehensive Drug Panel, Blood

| Analyte Name | Qualitative Result | Quantitative Result | Reporting Limit | Reference Range | Units | Note |
|---|---|---|---|---|---|---|
| VOLATILES | Negative | | | | | |
| Methanol | Negative | | | Not Established | | |
| Ethanol | Negative | | | Not Established | | |
| Acetone | Negative | | | Not Established | | |
| Isopropanol | Negative | | | Not Established | | |
| AMPHETAMINES | Negative | | | | | |
| ANALGESICS | POSITIVE | | | | | |
| Acetaminophen | POSITIVE | 17.9 | 5 | 10 - 30 | mcg/mL | |
| ANESTHETICS | Negative | | | | | |
| ANTICHOLINERGICS | Negative | | | | | |
| ANTICONVULSANTS | Negative | | | | | |
| ANTIDEPRESSANTS | Negative | | | | | |
| ANTIDIABETICS | Negative | | | | | |
| ANTIFUNGALS | Negative | | | | | |
| ANTIHISTAMINES | POSITIVE | | | | | |
| Diphenhydramine | POSITIVE | 290 | 50 | 30 - 300 | ng/mL | |
| ANTIPSYCHOTICS | Negative | | | | | |
| BARBITURATES | Negative | | | | | |
| BENZODIAZEPINES | Negative | | | | | |
| CANNABINOIDS | POSITIVE | | | | | |
| Delta-9-THC | POSITIVE | 2.3 | 1 | | ng/mL | |
| THC-COOH | POSITIVE | 10.8 | 3 | | ng/mL | |

**GIRON II, EDWARD**
**Laboratory Case #: 3224099**
**Printed Date/Time: 06/23/2021, 07:50**



**Testing Report**
Web: www.axisfortox.com
Phone: (317) 759-4TOX

**Laboratory Specimen No:**      **40944056**                          **Continued..**

| Analyte Name | Qualitative Result | Quantitative Result | Reporting Limit | Reference Range | Units | Note |
|---|---|---|---|---|---|---|
| CARDIOVASCULARS | Negative | | | | | |
| GASTROINTESTINALS | Negative | | | | | |
| HALLUCINOGENS | Negative | | | | | |
| MISCELLANEOUS | Negative | | | | | |
| MUSCLE RELAXANTS | Negative | | | | | |
| OPIOID ANALGESICS | Negative | | | | | |
| SEDATIVE/HYPNOTICS | Negative | | | | | |
| STIMULANTS | POSITIVE | | | | | |
| Cotinine | POSITIVE | | | | | |

Analyte is qualitatively POSITIVE, but has not been confirmed by an
alternate analytical method.

| | | | | | | |
|---|---|---|---|---|---|---|
| UROLOGICALS | Negative | | | | | |

Specimens will be kept for at least one year from the date of initial report.

**GIRON II, EDWARD**
**Laboratory Case #: 3224099**
**Printed Date/Time: 06/23/2021, 07:50**                                                        **Page: 2 of 4**



**Testing Report**
Web: www.axisfortox.com
Phone: (317) 759-4TOX

| | | | | |
|---|---|---|---|---|
| **Laboratory Specimen No:** | **40944057** | | **Date Collected:** | |
| **Container(s):** 01:RTT | Vitreous,EYE | | **Test(s):** 49901 | Volatiles Not Performed |

| Analyte Name | Qualitative Result | Quantitative Result | Reporting Limit | Reference Range | Units | Note |
|---|---|---|---|---|---|---|
| < Volatile Testing Not Performed  > | | | | | | |

Due to negative blood, tissue, and/or urine volatile (Acetone, Ethanol, Isopropanol, and Methanol) results, volatile testing was not performed on the vitreous specimen.

**GIRON II, EDWARD**
**Laboratory Case #: 3224099**
**Printed Date/Time: 06/23/2021, 07:50**



**Testing Report**

Web: www.axisfortox.com
Phone: (317) 759-4TOX

| Laboratory Specimen No: | 40944058 | | Date Collected: | |
|---|---|---|---|---|
| Container(s): 01:GRT | Blood,NOT INDICATED | | Test(s): 49900 | Not Tested |

| Analyte Name | Qualitative Result | Quantitative Result | Reporting Limit | Reference Range | Units | Note |
|---|---|---|---|---|---|---|
| <    No Testing Performed    > | | | | | | |

---

The Specimen identified by the Laboratory Specimen Number has been handled and analyzed in accordance with all applicable requirements.

**Laboratory Director**

**George S. Behonick, Ph.D., F-ABFT**

**GIRON II, EDWARD**
**Laboratory Case #:3224099**
Print Date/Time:06/23/2021, 07:50
**Page: 4 of 4**

**Case Reviewer**

*Kevin S Shanks*

This individual may not have performed any of the analytical work

5/19/2021
Duc Van Duong, M.D.
*Forensic Pathologist/Former Coroner*
*Contractor for Private Autopsy, Inc.*
844-924-0000 /Info@privateautopsy.com

# REPORT OF AUTOPSY.

**Decedent**:  EDWARD  Z.  GIRON II   **DOB**: 1/10/1986 **Case**: CA-21-5-19 EZG
**Date of Death:** 5-10-2021  35  **Date of Exam:** 5-19-2021 Time: 10AM
At the Chapel of the Roses. 3450 El Camino Real, Atascadero, CA 93422

---

**PATHOLOGICAL DIAGNOSES**

1. GUN SHOT WOUNDS (GSW'S)
   A. HEAD-
      Forehead- Severe BRAIN damage. One GSW - **Contact** wound.
      Left TEMPLE.
   B. TORSO (Chest and Abdomen)
      a. CHEST.  Lung injury.        One GSW
      b. ABDOMEN. Liver damage. Five GSW.
   C. BUTTOCK*.                Three GSW
   D. EXTREMITIES
      a. Left KNEE AREA-        Two GSW
      b. Left SHOULDER- *        One GSW--
      c. Left HAND.            One GSW

   **Total GSW**: 10 Front
            4 to Back:  **TOTAL 14**
   **Direction:** Wounds to Chest and Abdomen: from LEFT to RIGHT, slightly
DOWNWARD_
         And HEAD wound.


2. MENTAL HEALTH ISSUES
3. SECOND AUTOPSY.

**CAUSE OF DEATH:**

   MULTIPLE GUNSHOT WOUNDS TO BODY
    Please see opinions on last page


**6/21/2023**
Date

*Duc Van Duong M.D.*
     Duc Van Duong, M.D

2  GIRON    DOB: 1-10- 1986      CA21-5-19  EZG

CIRCUMSTANCES OF DEATH
**Clinical Information.**
**Detective report:**  An exchange of gunfire between the decedent and Police.
The body was found at the front door. A SEMI-AUTOMATIC AR-15 style rifle on top of
the torso. The Muzzle was in contact with the side of Giron's head (near his chin) and his
LEFT HAND was gripping the handguard cover of the weapon.

**First autopsy report by the coroner:** Gunshot wound to head.
The entrance is at the center of the forehead. There is soot deposition on the wound
edges, subcutaneous and over the skull. The wound pathway is from front to back with
an exit wound through the occipital prominence.

**SECOND AUTOPSY FINDINGS**
**Gunshot wound** to forehead/ slightly to the left temple side. There is severe damage
to the brain. Soot deposits are identified at the entrance wound (Closed contact wound).
The exit is on the back of the head . The wound path is from front to back and is slightly
to the left (photo).

**Gunshot wounds to the chest (1) and abdomen (5)** caused lung and liver
damage.
Distant shots when He was standing.
**Buttock (3)**
**Extremities (4)** Distant shots when he is lying face down.
All the internal organs were examined grossly. The Liver and lung and brain damage
were identified and photographed. No other pathology.

MEDICAL RECORDS: not available.

ANCILLARY TESTS:
Photography: A set of Digital Photos are taken during the autopsy
procedure.
　　　　　They are available for review at request.
　　　　　 The photos document all the major and important findings,
No whole organs are retained.

P3    GIRON    DOB 1-10-1986    CA-19-5-19 EGZ

**FINAL SUMMARY**
Based on the autopsy findings, Mr. Giron died of **multiple Gunshot wounds to the body with severe damage to the Brain, Lungs and Liver.**


 **Questions from the family**: The GSW to the head with entrance at the left side and he was right-handed.
Yes, it is unusual, but experts agree,  it can happen.
(attached).

CAUSE OF DEATH:

In my opinion, Mr. Giron died of Multiple GSW to the body, but he **did not shoot himself to the head**.

*According to the Police report:*
This was a big exchange of gunfire. An officer and Mr. Giron died. He was found at the front door.

*The autopsy findings:*
First, he was shot in the chest and abdomen when he was standing. The shot caused severe liver damage and bleeding, but he did not die instantly.
He fell to the ground and was shot in the legs.
He was near death by that time due to severe liver and lung injuries with internal bleeding.
It is unlikely that he was able to shoot himself
THE HEAD GSW:
The Head GSW is a contact wound with soot deposits at the edges.
But the WOUND PATH with the entrance at the slightly left side of the forehead
And exit at the occipital prominence (back of head). The angle is almost 90 degrees. (Photos).
It seems unlikely for the self-inflicted wound with a rifle.
Therefore, **Mr. Giron died of multiple GSW's** <u>from the Police.</u>

# Exhibit B.



# SAN LUIS OBISPO COUNTY
## SHERIFF'S DEPARTMENT

### PROPERTY RECEIPT



DATE 5/8/2021   INCIDENT NUMBER 2105-03706   PAGE 1 OF 1

| | MAKE | SERIAL NUMBER | DESCRIPTION |
|---|---|---|---|
| 1. | (8) PACK MARLBORO CIGGS, 15 BOXE | | |
| 2. | (15) BOXES NEWPORT 100 (5) BOXES Newport | | |
| 3. | 2 PAIRS SCARPA Climbing SHOES | | |
| 4. | 2 PAIRS MAD ROCK Climbing SHOE | | |
| 5. | 1 PAIR 5:10 CLIMBING SHOES | | |
| 6. | Petzel + Antenyr CLImbing HARNESS | | |
| 7. | MISC. Climbing Ropes | | |
| 8. | Cresent Bolt Cutters | | |
| 9. | Torlch + Asseer. | | |
| 10. | Air tank | | |
| 11. | (4) milwik DRIVERS (1) makita DRIVE + bits | | |
| 12. | (2) Drivers license Belonging to Simon | | |
| 13. | | | |
| 14. | | | |
| 15. | | | |
| 16. | | | |

☐ 1 - SAFEKEEPING        ☐ 2 - FIREARMS        ☒ 3 - SEARCH WARRANT

☐ 4 - EVIDENCE        ☐ 5 - HELD FOR OBSERVATION   ☐ 6 - OTHER

(SEE REVERSE SIDE FOR EXPLANATION)

OFFICER _____ #974 _____ WITNESS _____ OWNER _____

## PROPERTY COPY

SOFRM18 (Revised 07-06-05)

Search Warrant No. _14778_

## COUNTY OF SAN LUIS OBISPO - STATE OF CALIFORNIA
## SEARCH WARRANT and AFFIDAVIT
# AFFIDAVIT

San Luis Obispo Police Department Detective Steve Orozco declares under penalty of perjury under the laws of the State of California that the facts expressed by him in this Search Warrant and Affidavit and in the attached and incorporated Statement of Expertise and Statement of Probable Cause are true and correct, and that based thereon he has probable cause to believe and does believe that the property and/or person described below is lawfully seizable pursuant to Penal Code §1524, as indicated below, and is now located at the locations set forth below. Wherefore, affiant requests that this Search Warrant be issued.

_____,   SEALING ORDER REQUESTED   ☐YES ☒ NO
(Signature of Affiant)                                                        NIGHT SEARCH REQUESTED   ☐YES ☒ NO

# SEARCH WARRANT

THE PEOPLE OF THE STATE OF CALIFORNIA TO ANY SHERIFF, POLICE OFFICER, OR PEACE OFFICER IN THE COUNTY OF SAN LUIS OBISPO: proof by affidavit having been made before me by Detective Steve Orozco that there is probable cause to believe that the property and/or person described herein may be found at the locations set forth herein and is lawfully seizable pursuant to Penal Code §1524 as indicated below by "x"(s) in that it:

☒   was stolen or embezzled;

☐   was used as the means of committing a felony;

☐   is possessed by a person with the intent to use it as a means of committing a public offense or is possessed by another to whom he or she may have delivered it for the purpose of concealing it or preventing its discovery;

☒   tends to show that a felony has been committed or that a particular person has committed a felony;

☐   tends to show that sexual exploitation of a child in violation of Section 311.11, or depiction of sexual conduct of a person under the age of 18 years, in violation of Section 311.11, has occurred or is occurring.

YOU ARE THEREFORE COMMANDED TO SEARCH:  See Attached and Incorporated Attachment A

FOR THE FOLLOWING PROPERTY/PERSON:          See Attached and Incorporated Attachment B

It is further ordered per PC 1546.1 (d)(2) and 1546.1(e)(2) the following:
- All information seized that is unrelated to the objective of this warrant shall be sealed and not subject to further review, use, or disclosure without further court order.
- Any information seized that is unrelated to the objective of this warrant shall be destroyed as soon as feasible after the termination of the investigation and any related investigations or proceeding without further order.

Stolen property may be returned to the owner, and contraband destroyed when not needed for criminal prosecution without any further court order.  All other property may be returned, destroyed, used, or sold at auction after reasonable diligence to locate and notify the owner, and no response is received within 90 days of such notice.

This Search Warrant and incorporated Affidavit was sworn to as true and subscribed before me on this _10th_ day of _May_ 2021, at _4440_ A.M./P.M. Whereupon I find probable cause for the issuance of this Search Warrant and do issue it.

_____   SEALING ORDER APPROVED   ☐ YES   ☒ NO
(Signature of Magistrate)                   NIGHT SEARCH APPROVED   ☐ YES   ☒ NO

Judge of HERNALDO J. BALTODANO or San Luis Obispo Judicial District

Approved as to form only by Gregory Devitt, Deputy District Attorney, as required under San Luis Obispo County Rules of Court, Rule 10.02.  The scope of this approval does not include content or legal sufficiency.  The reviewing deputy district attorney makes no attestation, affirmation, adoption, or verification of the declaration made or facts asserted by the affiant in this document, attachments, or associated affidavit.

Date/Time of Execution:_____ By:_____ Peace Officer

1

Search Warrant No._____

# ATTACHMENT A

## YOU ARE THEREFORE COMMANDED TO SEARCH THE PREMISES LOCATED at:

3175 Camellia Court #D, City of San Luis Obispo, California (County of San Luis Obispo). It is further described that 3175 Camellia Court is an apartment building consisting of 4 apartments. The first floor of the building has tan stucco siding, and the second floor of the building has tan horizontal wood siding. Apartment #D is located on the second floor of the apartment building. The front door to apartment #D is red in color with a brown trim and faces west. There is a brown in color letter "D" approximately 12 inches tall and is affixed to the right of the front door. Search to include the primary structure and all rooms, buildings, outbuildings, garages, yard areas, trash containers, vehicles, storage areas, warehouses and containers used in connection with or within the curtilage of said premises and outbuilding(s).

## And the person(s) described as:

Edward Zamora Giron, DOB: 1/10/1986
Hispanic male, 6'01", approximately 170 LBS., Black hair and Green eyes.

## And the vehicle(s) described as:

Tan 2004 GMC Envoy, California License Plate 6PMW830
Currently registered to Edward Zamora Giron, 3175 Camellia Court Apt. D, San Luis Obispo, Ca.

1

Search Warrant No._____

# ATTACHMENT B

## FOR THE FOLLOWING PROPERTY:

A. Marlboro and Newport Cigarette boxes.

B. HP Tower Desktop.

C. Four iPad Minis.

D. Meraki Router MX64W

E. Net Gear POE switchboard 8 port and 16 port.

F. Milwaukee Impact wrench and batteries.

G. Mesa Safe MSL-500.

H. Makita 18v Impact and batteries.

I. 40m climbing rope, arcterix harness, Petzl Harness, Scarpa Instinct Climbing shoes, Mad Rock climbing shoes, five ten climbing shoes, Petzl Grigri, PAS (daisy chain), Mammut Bag.

J. Cash drawer, cash, wi-fi keyboard and mouse.

K. All other items located at the residence, on his person or in the vehicle that can be determined to be stolen from Pad Climbing Gym, Tractor Supply and Valero.

L. All cellphone devices belonging to Edward GIRON.

M. Any items of indicia showing Edward GIRON lives at the residence.

Search Warrant No._____

Search Warrant No._____

# STATEMENT of EXPERTISE

Your affiant, Steve Orozco, says that facts in support of the issuance of the search warrant are as follows:

Your affiant, Steve Orozco, is employed as a Police Officer for the City of San Luis Obispo, County of San Luis Obispo, State of California. My current assignment is as Detective with the Investigations Bureau of the San Luis Obispo Police Department.

Your Affiant is a duly sworn peace officer in the State of California. I have been employed as a Police Officer with the San Luis Obispo Police Department (SLOPD) since July of 2016. Prior to my employment here, I was a Police Officer with the King City Police Department from 2014 to 2016. Prior to that, I was also a Juvenile Institutions Officer in the County of Santa Barbara for the Santa Barbara County Probation Department. I have been through and graduated from the Police Academy at Allan Hancock College. I have successfully completed all field training within the San Luis Obispo Police Department, Santa Barbara County Probation Department and the King City Police Department. Prior to my employment in Law Enforcement and during my current employment, I attended Allan Hancock College where I obtained my Associates Arts Degree in Administration of Justice.

Since my employment, your affiant has received over 200 hours of formalized training in the law enforcement field. I have attended a post certified training to be certified as a field training officer in the State of California.

I have also received informal, in-the-field training by working with senior officers and investigators. As a peace officer, I have personally investigated or assisted in the investigation of over 300 crimes involving theft, burglary, fraud, robbery, drug crimes, rape, child molestation, weapons violations, homicide, gang crimes, hate crimes, human trafficking, sexual assault crimes, narcotics trafficking and use along with other associated financial crimes. I personally have served several search warrants with the law enforcement departments where I worked and currently work related to weapon related offences, gang related offenses, attempted murder, sex offenses, narcotics related crimes and various other crimes.

Your affiant has assisted in the execution of several search warrants written by himself or other investigators. In executing these search warrants, I have been involved in the seizure of narcotics, narcotics paraphernalia, photographs, computers, documents, stolen property, trace evidence, firearms, gang indicia and other types of evidence involved in the commission of numerous types of criminal activity.

4

## STATEMENT of PROBABLE CAUSE

On May 10, 2021, your affiant was assigned to assist with follow up investigation on a recent string of commercial burglaries. The first commercial burglary was documented in SLOPD report #210508010 by Officer Jacob Pelletier. Your affiant reviewed Officer Pelletier's report and learned the following:

On 05/08/2021 at approximately 0144 hours, Officer Pelletier was dispatched to an audible alarm call at Megan's Organic Market (███████████, City of San Luis Obispo, Ca). The area of activation was noted as the north west motion and the north east motion.

As officers arrived on scene and observed the shattered glass door, they made entry giving several announcements and cleared the business for any suspects. After doing so, Officer Pelletier made contact with Sarah WELLS who stated she would make the report on behalf of Megans Organic Market and advised her ██████████████ ██████████Sarah WELLS then proceeded to show Officer Pelletier the video where he observed the following.

The suspect was seen entering the business on video surveillance at 0137 hours. The suspect used a large black sledgehammer to shatter the glass door on the north side of the business. The suspect then entered the business for approximately 3-4 seconds while holding a cardboard box. It was apparent the suspect had intentions of taking items from the business based on the empty cardboard box that he carried in after shattering the door. As the suspect looked around the business and noticed there were no items of value left out on the shelves, he quickly retreated back through the shattered glass door.

The suspect was then seen getting into a light-colored GMC Envoy with no license plates and exiting the parking lot at 0137 hours and 40 seconds. The vehicle color appears to be beige or silver. From the video surveillance, it did not appear that there were any additional occupants in the GMC. The suspect then fled southbound on Higuera.

The suspect was also observed as early as 0113 hours in the parking lot casing the business and remained there until 0137 hours when he made entry.

The suspect appeared thin in build, approximately 6-00 tall with a dark colored jacket which had a reflective emblem on the upper left breast area and a face covering. The suspect appeared to walk with his feet slightly rotated inward and a slight hunch to his stature.

Sarah WELLS advised Officer Pelletier there is normally a metal roll down security door which pulls down behind the glass door, but it had recently been broken.

The GMC Envoy was a four-door vehicle with no license plates and a roof rack.

5

After reading Officer Pelletier's report, your affiant read Officer Joseph Cox's SLOPD report #210508104 and learned the following.

On May 8, 2021, Officer Cox was working uniformed patrol in the City of San Luis Obispo. At 2839 hours, Officer Cox responded to ▇▇▇▇▇▇, City of San Luis Obispo Ca, (Valero gas station) in reference a broken window at the business.

On arrival, Officer Cox contacted Steve ALISSAHI who advised he was contacted by the security company that there was a glass break alarm. Steve ALISSAHI responded to the Valero and observed the front door was shattered. He then contacted the police department to respond.

After checking the interior of the business, Steve ALISSAHI gave Officer Cox access to the security cameras to review and the following is what Officer Cox observed:

At 2313 hours, a GMC SUV pulled into the parking lot and parked directly in front of the front door. A male subject wearing a black beanie, a gray and black facemask, a dark hooded sweatshirt, dark jeans, and tennis shoes, exited the driver's seat and canvased the business.

At 2318 hours, the male used a large black sledgehammer to break the bottom half of the glass front door to the business. He grabbed a cardboard box and entered the business. The male went behind the register and begin to grab boxes of Marlboro and Newport cigarettes, approximately 10 each.

At 2319 hours, the male exited the store and drove away in the GMC SUV vehicle.

While grabbing the cigarettes, the male stepped directly in front of a security camera, capturing the uncovered portion of his face. Based on the footage, it appears the male is between the ages of 20-30 years old, either Hispanic or Asian, with dark colored eyebrows, and dark colored eyes.

Based on the footage, it appears that the suspect vehicle is a 2000-2004 GMC Envoy and is gold in color. The vehicle did not have any mounted license plates but appeared to have a horizontal dent right above the tow hitch.

Officer Cox recognized both the suspect and the suspect vehicle from a commercial burglary that occurred at Megan's Organic Market (▇▇▇▇▇▇ City of San Luis Obispo, Ca) at 0142 hours (SLOPD report #2105060101). The suspect used the same sledgehammer and had a cardboard box when he broke the window and entered the business.

After reading Officer Cox's report, Your affiant read Officer Cox's second SLOPD report #210510006 in which he documented another commercial burglary. The following is what your affiant learned.

On May 10, 2021, Officer Cox was working uniformed patrol in the City of San Luis Obispo. At 0408 hours, Officer Cox responded to ▓▓▓▓▓▓▓ (Tractor Supply), in reference a glass break alarm.

On arrival, officers located a broken front window to the business. After clearing the business, Tonya LOVITT allowed Officer Cox to access the security camera footage.

While reviewing the video footage, Officer Cox observed a light-colored SUV pull into the Tractor Supply parking lot from Tank Farm at 0355 hours. The vehicle backed up to the front door and one subject exited the driver's seat. The subject opened the rear tailgate and then the video skipped ahead. When the video continued, it showed the subject load a large box into the trunk of the vehicle and drive away northbound through the parking lot at 0357 hours.

Officer Cox recognized both the suspect and the suspect's vehicle from two other commercial burglaries that occurred at Megan's Organic Market (210508010) and Valero (210508104) on 05/08/21. In both of those burglaries, the male suspect used a large sledgehammer to break the window and quickly grabbed a small amount of merchandise before fleeing. The suspect vehicle in those incidents was a 2000-2004 GMC Envoy that is gold in color.

Tonya LOVITT advised she was unable to determine the exact items taken in the burglary, but if she can identify the items, she will send Officer Cox an email. Tonya LOVITT also reviewed the security footage with Officer Cox and recognized the male and his vehicle from a week when he entered the store and was acting suspiciously. Tonya LOVITT said the vehicle was parked on Long behind Tractor Supply with a class A style RV and a BMW.

Officer Cox drove around the area and located an RV (4JCS848) with a silver BMW (8RDE918) parked behind it. Officer Cox contacted Richard PEREZ inside the RV and showed him a picture of the Envoy. Richard PEREZ denied having any association with the Envoy and does not know anyone that drives one. Richard PEREZ said he would contact dispatch if he remembered who might drive one or sees it in the area.

After reading Officer Cox's report, your affiant read Officer Corey Swartz SLOPD Report #210510007 in which he documented another commercial burglary. Your affiant learned the following from Officer Swartz report.

On 05/10/2021 at around 0535 hours, Officer Swartz was dispatched to Pad Climbing Gym, located at ▓▓▓▓▓▓ City of San Luis Obispo, Ca for a commercial burglary investigation.

Thane LINCOLN identified himself ▓▓▓▓▓▓▓▓▓ Thane LINCOLN arrived this morning and noticed items missing. The following is a summary of his statement to Officer Swartz.

STATEMENT OF Thane LINCOLN to Officer Swartz:

Thane LINCOLN was last at the gym on 05/09/2021 at 2200 hours. He arrived this morning at around 0500 hours and noticed several computer towers were missing from the front desk area. Thane LINCOLN continued to look around the gym and noticed an interior door was damaged and the small floor safe was missing. Thane LINCOLN identified ▓▓▓▓▓▓▓▓▓▓▓▓▓ Yishai HOROWITZ. Thane LINCOLN had attempted to contact Yishai HOROWITZ but had not heard back from him.

Thane LINCOLN did not have any information regarding the computer towers that were stolen. He described the floor safe as a small, grey floor safe about 2'x2'. The safe contained several Apple iPads and about $400.00 in cash.

Officer Swartz asked about surveillance cameras and Thane LINCOLN directed Officer Swartz into a small office where the camera system hard drive is located. Thane LINCOLN pointed to a small black cabinet above a desk and advised the hard drive was missing.

Located beneath the cabinet was an orange office chair. The chair was covered in vinyl plastic. Officer Swartz located a single shoe impression in the vinyl upholstery of the chair. The cabinet located above the chair was black. On one side of the cabinet, Officer Swartz located a latent fingerprint. The entire cabinet was clean other than the area where the print was located. Thane LINCOLN advised the cabinet is not regularly accessed by staff and he had not seen the print before. The latent print was highly visible as the entire gym is covered in a thin layer of climbing chalk. Officer Swartz requested assistance from CSI Officer Cox. Officer Cox arrived at the scene and processed the cabinet and lifted the latent print. In addition, Officer Cox swabbed the cabinet for possible DNA evidence.

Officer Swartz walked the exterior of the gym with Thane LINCOLN and they did not locate any forced entry. Thane LINCOLN explained that the gym can be accessed 24 hours a day by any member. Members gain access via a key fob that opens the front door. The key fob access is recorded in a cloud-based database. Thane LINCOLN checked the system and identified the last member to use a key fob was on 05/09/21 at 2249 hours. Thane LINCOLN identified the member by name only as Wes Forslund-Mooers.

Thane LINCOLN advised he would have to research the gym's records to provide further information on the electronics stolen. Officer Swartz requested he compile a detailed list of any items stolen and provides it to the police department as soon as possible.

After reading Officer Swartz report, your affiant read Officer Humi's report who conducted follow up on Officer Swartz initial report (SLOPD #210510007). The following is what your affiant learned from Officer Humi's report.

On 05-10-21 at approximately 0918 hours, Officer Humi was dispatched to contact the owner, Yishai HOROWITZ, regarding a commercial investigation. Officer Humi responded to The Pad ████████, City of San Luis Obispo, Ca). Once on scene, Officer Humi contacted Yishai HOROWITZ. Yishai HOROWITZ communicated the following to Officer Humi in summary:

STATEMENT OF Yishai HOROWITZ to Officer Humi:

Yishai HOROWITZ had determined several computers, a router, a safe, and miscellaneous climbing gear had been stolen from the facility. Yishai HOROWITZ was working on a list to provide Officer Humi. Since arriving at the business, Yishai HOROWITZ had reviewed the system's electronic log in system. Customers of the business normally have access 24 hours a day using an electronic fob to unlock the front door. This system uploads to a cloud showing who entered and at what time. The last user was Wesley FOSLUNDMOOERS, who entered at 2259 hours on 05-09-21. The system does not show log out times. Yishai HOROWITZ had identified how the suspect had entered the facility without forcing entry, and without utilizing the fob system. The building has what he called a "Realtor Box" on an exterior service room door on the south end of the building. This box had a combination to open it, and a front door key inside. The box, and the key inside, was now missing. The mounting point for the box was still visible on the door.

Yishai HOROWITZ only had one idea about who might be responsible for the burglary. Yishai HOROWITZ acknowledged he only knew of one person who would know about the safe (which was in an employee only office), where the hard drive and router were, and how to get in without detection. Yishai HOROWITZ stated the only person who had any animosity for him, who had motive and means, was Edward GIRON. Edward GIRON had been an employee of his until approximately March 2020. At that point Edward GIRON was terminated for poor job performance. It was during this time that Edward GIRON learned of the spare key in the lock box, the location of the safe and its contents, the hard drive that stores the video data from the surveillance system, and the Wi-Fi router. There was no animosity from the termination on Yishai HOROWITZ's part, so he allowed Edward GIRON to remain a member and use the facility.

After several months of membership, Edward GIRON began to act in an inappropriate manner. Edward GIRON was harassing a female employee of the business, wanting to go out with her and saying things about knowing where she lived or when she worked. At that time, Yishai HOROWITZ revoked Edward GIRON's membership, deactivating Edward GIRON's access fob. Yishai HOROWITZ believed Edward GIRON was the only person who could accomplish this burglary in the manner it was carried out, due to his motive and unique knowledge of the facility and its operation. Although he had changed the combination to the lock box, he acknowledged it would be easy to knock it off the door, break it open, and get the key out.

Yishai HOROWITZ requested dispatch run a record check of Edward GIRON. Dispatch communicated to Officer Humi that they located a GMC Envoy in Spillman that was

listed as associated with Edward GIRON and they performed a record check of that vehicle as well. Officer Humi remembered that our agency had recently taken several burglaries in the city that included a GMC Envoy as the suspect vehicle. As this is a relatively uncommon vehicle, Officer Humi opened the photos Officer Cox had emailed out. Officer Humi showed the photos to Yishai HOROWITZ, who stated the suspect in those photos could be Edward GIRON. Yishai HOROWITZ communicated to Officer Humi that Edward GIRON was half Hispanic and half Filipino. Yishai HOROWITZ believed the suspect's face as shown in the photo could be Edward GIRON. He also stated that the suspect seen standing next to the suspect vehicle had an overall build consistent with Edward GIRON.

Officer Humi now believed the suspect and suspect vehicle might be the same as several other burglaries in the city in the last few days. The vehicle was registered to Edward GIRON with an address of 3175 Camellia Ct Unit D, in San Luis Obispo. Edward GIRON also had this address on his driver's license as his most recent address. Officer Humi contacted Detective Womack and requested she respond to the address in an unmarked vehicle to determine if the suspect vehicle was in the area. Detective Womack and your affiant responded to the area and located the suspect vehicle. Your affiant communicated to Officer Humi there was a large object covered in the back of the vehicle and chalk all over things.

Officer Humi contacted Wesley FOSLUNDMOOERS via telephone. He communicated to Officer Humi.

STATEMENT OF Wesley FOSLUNDMOOERS to Officer Humi:

Wesley FOSLUNDMOOERS said he had been at the facility from 2249 hours until approximately 1206 hours, 05-10-21. When he left, there was no one else in the facility. He remembered the door closing all the way, and stated it automatically locks. When he left, there was no damage to the office door, and nothing missing.

While Officer Humi was finishing up at The Pad, an employee or member of the business pointed out to Officer Humi that Browder Painting, which was on the corner of Ricardo and Sacramento, had a camera filming their own driveway, on Ricardo, that likely captured the road. Officer Humi responded to the business where he contacted Ryan BROWDER, ████████ Ryan BROWDER showed Officer Humi the playback from the night previous on the computer screen. The angle was such, and the quality was high enough, that a basic vehicle description passing the location would be identifiable. Officer Humi began reviewing the video attempting to locate a GMC Envoy. At approximately 03:27:05 hours, a vehicle can be seen driving on Ricardo from Sacramento toward The Pad. Based on Officer Humi's training and experience, he recognized this vehicle as being distinctly similar in size, color, and shape to the GMC Envoy pictured in surveillance footage from the other incidents. Further, Officer Humi recognized unique body characteristics of the vehicle that identify it as a GMC Envoy. Officer Humi continued to review video footage from this camera until he observed what appears to be the same vehicle travelling past the camera in the opposite direction at

approximately 04:04:45 hours. Yishai HOROWITZ later emailed Officer Humi and your affiant a list of the stolen items. The following is a list of some of the property stolen from Pad Climbing Gym: HP Tower Desktop, Four iPad Minis, Meraki Router MX64W, Net Gear POE switchboard 8 port and 16 port, Milwaukee impact wrench and batteries, Mesa Safe MSL-500, Makita 18v impact and batteries, 40m climbing rope, arcterix harness, Petzi Harness, Scarpa Instinct Climbing shoes, Mad Rock climbing shoes, five ten climbing shoes, Petzi Grigri, PAS (daisy chain), Mammut Bag, Cash drawer, cash, wi-fi keyboard and mouse.

On 5/10/2021, Detective Womack and your affiant responded to 3175 Camellia Court, City of San Luis Obispo, Ca and located a Tan 2004 GMC Envoy in the parking lot. Your affiant verified the VIN on the vehicle and saw it matched the vehicle belonging to Edward GIRON. During a visual search of the vehicle, we could see broken glass on the backseat, but the vehicle did not have any broken windows. We also saw there was a large object on the backseat that was covered. It appeared there was chalk on the backseat of the vehicle. Detective Womack told me she had been to Pad Climbing Gym and it is very typical for your clothes or anything you take inside the gym to be tainted with chalk as it is all over the gym. We inspected the tan 2004 GMC Envoy and saw that the vehicle did not have license plates as seen on the video surveillance recovered from the other investigations. We also saw that there was a dent on the rear bumper just above the hitch which was in the same location Officer Cox had noted on his report.

Your affiant reviewed the video surveillance and saw that the vehicle was missing the wheel caps on the front left and rear left wheels. Your affiant saw that Edward GIRON'S vehicle was missing the wheel caps on those wheels also. Your affiant also saw on the video surveillance that the rear wiper blade appeared damaged and was hanging lower than that of any other SUV vehicle having similar rear wiper blades. Your affiant saw that Edward GIRON'S had the same defective rear wiper blade. Your affiant also saw in the surveillance video collected from the investigations that the SUV depicted had two front tow hitch receivers under the front bumper. Based on your affiant's training and experience, having two front tow hitch receivers is not common on vehicles. Your affiant observed these two front two hitch receivers on Edward GIRON'S vehicle. Based on all these characteristics and items inside the vehicle, your affiant believes that the vehicle seen in the video surveillance of the burglaries is Edward GIRON'S vehicle.

## REQUEST for SEARCH WARRANT

Your affiant has worked with other experienced detectives and officers in burglary and theft criminal investigations. I have had multiple contacts with suspects involving burglary and theft investigations. Through the investigations I have learned how burglaries and thefts are committed, why they are committed, what tools are used to commit the crimes. During present and past law enforcement assignments, your affiant has had occasion to conduct and participate in numerous investigations involving arrests and examinations of persons and situations involving burglary and theft. This has enabled your affiant to become more familiar on the suspects train of thought when

committing these crimes and how they are committed to avoid being detected by law enforcement.

Your affiant has participated in and discussed with other investigators numerous burglary and theft related search warrant investigations wherein evidence was seized from residences, persons and/or vehicles. Your affiant has conducted numerous interviews of persons who were suspected of, and/or involved in burglaries and/or theft cases. During these interviews, your affiant has learned that persons who commit these crimes typically conceal stolen property on their person, in their vehicle, storage units, outbuildings and/or their residence. This enables them to secure/conceal the stolen property to keep it from law enforcement and to be readily available to be sold or disposed of. Your affiant believes that searching the residence, the persons and vehicle could and will be helpful in locating the stolen property from this investigation that is believed to be in possession of Edward GIRON.

# Exhibit  C.

# Attachment to Exhibit C

The U-tube Video and the first press release are in the possession of San Luis Obispo archives. I have not received a copy to provide to the court.

NAME, ADDRESS AND TELEPHONE NUMBER OF ATTORNEY(S)

Caroline M. Wichman (Pro Se)
60 Descanso Drive #2117
San Jose, CA 95134

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| Caroline M. Wichman | **CASE NUMBER** |
| PLAINTIFF(S), | CV22-3156-DMG |
| v. | |
| City and County of San Luis Obispo, CA and Defendants Attorneys Douglas C. Smith and Joshua M. George | **PROOF OF SERVICE – ACKNOWLEDGMENT OF SERVICE** |
| DEFENDANT(S). | |

I, the undersigned, certify and declare that I am over the age of 18 years, employed in the County of County of Santa Clara, _____, State of California, and not a party to the above-entitled cause. On July, 18 _____, 20 23 _____, I served a true copy of A letter sent to Honorable Dolly M. Gee United States District Court 350 W First St. Los Angeles, CA 90012 by personally delivering it to the person (s) indicated below in the manner as provided in FRCivP 5(b); by depositing it in the United States Mail in a sealed envelope with the postage thereon fully prepaid to the following: (list names and addresses for person(s) served. Attach additional pages if necessary.)

Place of Mailing: Joshua George, 6633 Bay Laurel Place, Avila, CA & Douglas Smith, 4001 11th St. Riverside, CA 92501
Executed on July 18th _____, 20 23 _____ at Santa Clara County _____, California

Please check one of these boxes if service is made by mail:

☐ I hereby certify that I am a member of the Bar of the United States District Court, Central District of California.

☐ I hereby certify that I am employed in the office of a member of the Bar of this Court at whose direction the service was made.

☒ I hereby certify under the penalty of perjury that the foregoing is true and correct.

_____
*Signature of Person Making Service*

## ACKNOWLEDGEMENT OF SERVICE

I, _____, received a true copy of the within document on _____.

_____          _____
*Signature*                                *Party Served*

To: Attention: Kane Tien
Deputy Clerk
Judge Dolly M. Gee
United States District Court
350 W. First Street
Los Angeles CA 90012

RECEIVED U.S. DISTRICT COURT

JUL 2 5 2023

CLERK, U.S. DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
BY _____ DEPUTY

7022 3330 0001 8065 7438

PLACE STICKER AT TOP OF ENVELOPE TO THE RIGHT
OF THE RETURN ADDRESS, FOLD AT DOTTED LINE

CERTIFIED MAIL®

2022 3330 0001 8065 7438

Retail

UNITED STATES
POSTAL SERVICE®

RDC 99

90012

U.S.
FCM
SAN
JUL

$6

R2305